Allegheny County Auto Mart, Inc. v. Commissioner.
Allegheny County Auto Mart, Inc. v. Commissioner
Docket No. 38166.
United States Tax Court
1953 Tax Ct. Memo LEXIS 286; 12 T.C.M. (CCH) 427; T.C.M. (RIA) 53140; April 21, 1953
Samuel M. Rosenzweig, Esq., 1401 Law and Finance Building, Pittsburgh, Pa., for the petitioner. Edward L. Cobb, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $6,996.01 in income tax of the petitioner for 1948. The *287 only issue is whether the Commissioner erred in disallowing an alleged loss of $14,000 on the disposition of the property at 5860 Baum Boulevard. Findings of Fact The petitioner, a Pennsylvania corporation, filed its return for 1948 with the collector of internal revenue for the Twenty-third District of Pennsylvania. The petitioner was incorporated on March 17, 1947 to engage in the retail used car business. Weisman and two others each owned one-third of its stock. It started in business in the spring of 1947 on a property at 5316 Liberty Avenue, Pittsburgh, which it leased on March 1, 1947 for one year and two months at a rental of $200 a month. The property was improved with a three-story brick building and a two-story garage in the rear. The size of the lot is not shown. The lease contained a provision that it could be terminated upon 60 days' notice. The lessor notified the petitioner on July 7, 1947 that the property had been sold. The new owners demanded a new lease and such a lease was entered into on September 10, 1947 for a period of seven and two-thirds months at a rental of $350 a month. That lease also contained a provision that it could be terminated upon 60 days' *288 notice. The property was again sold and the petitioner entered into a new lease with a new owner on January 1, 1948 for a period of one year at a rental of $500 a month. That lease also contained a provision that it could be terminated upon 60 days' notice. The record does not show how long the petitioner continued to occupy that property. The business of the petitioner had increased beyond the original expectations of its stockholders and it began in June 1947 to look for a suitable location which it could buy and on which it could conduct its business. It engaged a real estate broker to find it a suitable used car lot on Baum Boulevard. The real estate agent found a property and a special meeting of the board of directors of the petitioner was held on June 5, 1947 to authorize the purchase of it for a price not to exceed $23,500. The deal fell through due to no fault of the petitioner or the real estate agent. The board of directors of the petitioner held another special meeting on September 15, 1947, the minutes of which include the following: "Moved, that the President and Secretary are authorized and directed to enter into an agreement of purchase for all that certain *289 real estate known and numbered as 5864 Baum Boulevard, PittsburghPennsylvania, at a price not to exceed $24,000, and to execute all necessary agreements, mortgages, documents, bonds, and all necessary papers to effectuate said purchase. "Moved, that the President and Secretary are herewith authorized and directed to sign the necessary purchase agreements for that property known as those certain lots or pieces of ground situate in the Eighth Ward of the City of Pittsburgh, Pennsylvania, being parts of Lots No. 78, all of Lots No. 79, 80 and 81, in the Mellon's Plan of Baum Grove Property, being approximately 170 feet on Baum Boulevard and a depth of 115 feet to Commerce Way, at a price not to exceed $50,000, and for this purpose to execute all the necessary bonds, mortgages, agreements, and other documents necessary for the purchase thereof. "Moved, that the President and Secretary are herewith authorized and directed to negotiate, effectuate and complete the sale of property at No. 5864 Baum Boulevard, at a proper price, after purchase of the above 170 foot property is made, and for this purpose to exercise all necessary deeds, documents and other papers requisite thereto." *290 The property referred to in the above minutes as No. 5864 Baum Boulevard is also known as 5860 Baum Boulevard and hereafter will be referred to by the latter number. The other property referred to in the minutes is known as 5820 Baum Boulevard. It was practically a vacant lot. Weisman learned in September 1947 that the property at 5860 Baum Boulevard could be purchased and he negotiated with Norbert Stern, one of the owners of that property, in October 1947 as a result of which the petitioner entered into an agreement dated October 27, 1947 with the owners to buy the property for $24,000, $5,000 payable upon execution of the agreement and $19,000 upon the delivery of the deed. The property was then leased to someone not shown by the record, but the lease contained a provision that it could be terminated upon notice of 60 days. The property had a frontage of about 40 feet on Baum Boulevard and a depth of about 115 feet. An old one-story brick and frame building in poor condition was on the property. The property was too small and otherwise not well suited to the petitioner's business. Weisman negotiated with Meyer Marcus for the purchase of the property known as 5820 Baum Boulevard *291 and the petitioner entered into an agreement with Marcus dated November 7, 1947 for the purchase of that property for $50,000 on or before January 10, 1948, $5,000 payable on signing the agreement, $27,000 upon delivery of a deed and the balance represented by mortgages for $18,000 to be assumed by the purchaser. The petitioner on that same day entered into an agreement with Marcus for the sale to him of the property at 5860 Baum Boulevard on or before January 10, 1948 for $10,000. Marcus wanted that property for his own wholesale used car business and after he acquired it, he improved it and used it in that business. Marcus would not have entered into the agreement to sell his property at 5820 Baum Boulevard if he had not been able at the same time to enter into the other agreement to purchase the other property. The property at 5820 Baum Boulevard was suitable for the petitioner's business. The petitioner wanted to conduct its business on that property and when it acquired the lot, it improved the property and used it in its business. The real estate agent had negotiated with Marcus at intervals in the fall of 1947 for the purchase of the property at 5820 Baum Boulevard for the *292 petitioner. Weisman had advised the real estate agent that the petitioner would be willing to pay as much as $65,000 for the lot but the agent was first to offer $57,500 and then $60,000 and the building at 5860 Baum Boulevard to be given in part payment of $24,000. The agent was continuing with his negotiations when one day he learned from Marcus that the transaction had been consummated by the signing of an agreement. The owners of 5860 Baum Boulevard executed a deed dated January 2, 1948 conveying that property to the petitioner in accordance with the agreement of October 27, 1947. The petitioner conveyed that property to Marcus by a deed delivered January 7, 1948. Marcus conveyed the property at 5820 Baum Boulevard to the petitioner by a deed dated January 7, 1948 in accordance with the agreement of November 7, 1947. The petitioner assumed mortgages for $18,000 as part of the consideration for that property. The petitioner never occupied the property at 5860 Baum Boulevard. The following table shows information in regard to various properties fronting on Baum Boulevard: ASSESSED VALUE
SALES
1947
Baum Blvd.
Frontage
Land
Building
Total
Price
Date
5840-42
(40feet)
$16,800.00
$12,200.00
$29,000.00
$36,057.20
2/17/47
5844-50
(80feet)
$32,000.00
$ 7,000.00
$39,000.00
$42,074.00
3/11/47
5852-58
(80feet)
$31,000.00
$13,900.00
$44,900.00
$55,036.00
4/29/47
5860-62
(40feet)
$16,000.00
$ 2,500.00
$18,500.00
$24,000.00
10/27/47
($10,000.00)
11/ 7/47
5864-66
(40feet)
$16,000.00
$ 5,000.00
$21,500.00
$28,467.00
3/18/47
5870-80
(90feet)
$39,000.00
$17,000.00
$56,000.00
$60,667.00
4/16/47
5820
(170feet)
$59,500.00
$59,500.00
($50,000.00)
11/ 7/47
*293 NOTE: Prices indicated in brackets are the ones which respondent does not accept as being the actual independent prices at which the properties would sell in 1947. Marcus purchased the property at 5820 Baum Boulevard on April 18, 1947 for $45,333. The properties, 5852 through 5862 Baum Boulevard, mentioned above, were purchased on December 14, 1946 for $62,020.16. The petitioner, in its return for 1948, claimed a loss of $14,000 on the sale of the property at 5860 Baum Boulevard. The Commissioner, in determining the deficiency, disallowed that loss and explained "It is determined that the exchange of property at 5860 Baum Boulevard for the property at 5820 Baum Boulevard in 1948 did not result in a loss since you held the property for productive use in your trade or business. Therefore, the amount of $14,000.00 claimed as a deduction in your income tax return is disallowed." Opinion MURDOCK, Judge: The Commissioner argues that the transfer of 5820 to the petitioner and the transfer of 5860 to Marcus were inseparable, the latter a condition of the former, and must be regarded as but parts of a single transaction for income tax purposes. The facts fully support that contention. *294 He does not claim that that transaction comes within section 112 (b) (1) but reasons that 5860 was exchanged for 5820 in that transaction, the two properties were of like kind for productive use in the petitioner's business, and no loss on 5860 is recognized because section 112 (e) as it relates to subsection(b) (1) applies. Section 112 (e) is entitled "Loss from Exchanges Not Solely in Kind" and provides in part that if an exchange would be within subsection(b) (1), except that the property received in exchange consists not only of property permitted by (b) (1) to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized. The provision of subsection (b) (1) relied upon is that no gain or loss shall be recognized if property held for productive use in its business is exchanged by a taxpayer solely for property of a like kind to be held for productive use in its business. One weakness in this argument may be, as the petitioner contends, that the petitioner never for a moment held the property at 5860 for productive use in its business since its transfer of that property to Marcus was without lapse *295 of time after the transfer of the property to it and that course had been agreed upon before the petitioner acquired 5860. But however that may be, there is another fatal defect in the argument. Section 112 (e) was intended to apply only where the receipt of "other property or money" by the taxpayer made (b) (1) inapplicable. It is apparent that this petitioner received no "other property or money" within the meaning of (e) if the transfers between the petitioner and Marcus are regarded as but parts of an integral whole. The $10,000 cash due to the petitioner from Marcus on the transfer of 5860 was more than offset by the $32,000 cash owed by the petitioner to Marcus for 5820. Marcus received "money" but the petitioner did not in the final analysis. The petitioner came out of the deal with only the 5820 property and the argument of the Commissioner that section 112 (e) applies is unsound. The petitioner argues that there was no connection between its purchase of 5860 and the later transactions involving 5860 and 5820. It says it was forced, by the uncertainties and difficulties encountered in leasing the Liberty Avenue property, to buy 5860 Baum Boulevard to be sure of a place, in *296 this case a poor one, in which to conduct its business and it was willing to unload that property at a loss of $14,000 after it later found it could buy, and entered into a binding agreement to buy, the wholly suitable lot at 5820 for $50,000. That argument, regardless of factual support, is beside the point. 5860 was not sold in a separate transaction resulting in a loss of $14,000 deductible under sections 23 (f) or 117. The disposition of 5860 and the acquisition of 5820 were parts of a single inseparable deal in which the petitioner transferred 5860 as a part of the consideration for 5820. $10,000 was not the amount realized by the petitioner from the disposition of 5860. Marcus would not transfer 5820 to the petitioner for the stated amount of $50,000 unless the petitioner transferred 5860 to him for the stated amount of $10,000. The reality and the effect of the transaction for income tax purposes was that the two properties changed hands and the petitioner paid Marcus "boot" of $40,000, part of which was represented by the mortgages for $18,000. Thus, the petitioner acquired 5820 for net cash of $22,000, a property which cost it $24,000 and the assumption of mortgage debts of *297 $18,000. It has not shown that it sustained any loss on the disposition of 5860 or that it is entitled to deduct any such loss. There would not be even an economic loss if, as there is some evidence to indicate, 5820 was worth $64,000. The petitioner must be regarded as having gotten its money's worth for 5860 when it transferred it in the deal for 5820. Cf. . Decision will be entered for the respondent.